IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 03-cv-01374-PSF-OES

JAMES A. GOETTSCH, and
LESLIE GOETTSCH, Individually
And as Husband and Wife,

 Plaintiffs,

v.

FORD MOTOR COMPANY,

 Defendant.

---

**ORDER ON PENDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

---

 THIS MATTER is before the Court on Defendant Ford Motor Company's Motion for Partial Summary Judgment (Dkt. # 40), filed September 20, 2004 and Defendant Ford Motor Company's Summary Judgment Motion on the Issue of Punitive Damages (Dkt. # 59), filed May 2, 2005.

**I. FACTS AND PROCEDURAL HISTORY**

 On June 27, 2000, Plaintiffs James A Goettsch and Leslie Goettsch suffered a single vehicle accident when the 1996 Ford Explorer they were driving slid and rolled over near Steamboat Springs, Colorado.  Mr. Goettsch was driving and his wife was in the passenger seat.  The Goettsch's son and nephew were in the back seat. Apparently, Mr. Goettsch passed out behind the wheel and the Explorer drifted into the on-coming traffic lane.  Ms. Goettsch evidently grabbed the steering wheel and attempted to gain control of the vehicle.  It appears Mr. Goettsch awoke and grabbed

the steering wheel and during his attempt to control the Explorer, steered it in several violent maneuvers that resulted in the vehicle rolling over. Mr. Goettsch, who was not wearing a seat belt, was ejected and injured. The remaining passengers were either not injured or refused transport to a hospital.

Plaintiffs originally filed this action on September 5, 2001 in the Eastern District of Missouri, alleging multiple causes of action stemming from negligent and purposeful design defects in the handling and stability characteristics of the Ford Explorer. Plaintiffs raised additional claims against the now-dismissed Defendants Bridgestone/Firestone, Inc. and Bridgestone Corporation. The Multidistrict Litigation Panel transferred the case to the Southern District of Indiana pursuant to multidistrict proceedings pending against former Defendants Bridgestone/Firestone, Inc. and Bridgestone Corporation. Upon remand by the Southern District of Indiana, the Eastern District of Missouri court granted Ford's motion to transfer pursuant to 28 U.S.C. § 1404(a) on July 9, 2003. The case was initially assigned to Judge Blackburn of this Court and reassigned to Judge Figa on October 27, 2003.

## II.     SUMMARY JUDGMENT

### A.     Standard of Review

Summary judgment is appropriate under F.R.Civ.P. 56(c) if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When applying this standard, the Court reviews

the pleadings and the documentary evidence in the light most favorable to the nonmoving party. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In addition, "'where the non-moving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) quoting *Celotex*, 477 U.S. at 322.

      **B.**      **September 20, 2004 Motion for Partial Summary Judgment (Dkt. # 40)**

In this motion, Ford argues that Michigan law should apply to plaintiffs' claim for punitive damages. Ford contends that Colorado's choice of law provisions dictate that the substantive law of Michigan apply to plaintiffs' punitive damages claim. Ford avers generally that Michigan bears the "most significant relationship" to the dispute and to the parties in this case because Ford designed, manufactured, and conceived the marketing campaign of the Explorer in Michigan. *See* Ford Motor Company's Motion for Partial Summary Judgment at 2. Michigan law prohibits recovery of punitive damages, *see e.g., Fellows v. Superior Prods. Co.*, 201 Mich. App. 155, 157, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993), while Colorado law allows such claims under certain circumstances, *e.g.*, C.R.S. § 13-21-102(1). Plaintiffs do not challenge that

under Michigan law, they would be unable to recover punitive damages; however, they contend that Colorado law should apply. The Court must therefore determine which state's substantive law should apply in this case.

Because this case was transferred to this Court from the Eastern District of Missouri under 28 U.S.C. § 1404(a), the Court must apply the conflicts law of the transferor court. *Van Dusen v Barrack*, 376 U.S. 612, 639 (1964). Missouri like Colorado has adopted the "most significant relationship to the occurrence and the parties" as set forth in Restatement (Second) of Conflict of Laws, §§ 145 and 6. *Compare First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 448, 514 P.2d 314, 320 (Colo. 1973); *Kennedy v Dixon*, 439 S.W.2d 173, 184 (Mo. 1969). Section 145(1) provides: "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Section 6(2) lists the following factors to be considered in determining which state's law to apply: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

Thus, under the Restatement's guidance, the Court must examine the specific facts of this case to determine which state's law to apply to the plaintiffs' claim for

punitive damages.  Here, plaintiffs reside in Colorado.  The accident occurred in Colorado.  The Explorer was licensed, insured and registered in Colorado.  Ford markets it vehicles through dealerships in Colorado.  Plaintiffs have no connection whatsoever to Michigan.  Moreover, Colorado has a strong interest in seeing that its citizens are fully compensated for their injuries and that they do not become dependent on the state.  *See In re Aircrash at Stapelton Airport*, 720 F. Supp. 1445, 1451 (D. Colo. 1988); *Sabell v. Pacific Intermountain Express Co.*, 536 P.2d 1160, 1166 (Colo. Ct. App. 1975).  Punitive damages are generally deemed not compensatory in nature as they are designed to punish a tortfeasor and deter future wrongful conduct by the defendant and others.  *See e.g. Coors v. Security Life Ins. Co.*, 112 P.3d 59, 65 (Colo. 2005).  In Michigan, however, punitive damages are compensatory in nature and are distinct from exemplary damages.  *See Fellows, supra.*  In any event, nearly all of the Restatement factors weigh in favor of applying the law where the accident occurred and the state of domicile of the parties involved.

Ford argues that Michigan's punitive damages law should apply in this products liability case because the design, assembly and marketing of Ford Explorers generally takes place in Michigan.  However, there is no injustice in requiring Ford, an established international corporation that conducts substantial business in Colorado and knows its vehicles will regularly travel on Colorado highways, to be responsible under Colorado law for punitive damages if proven that injuries of Colorado residents were caused by Ford's tortious conduct justifying such damages.  Also, it would seem at least somewhat incongruous under the Restatement approach for Colorado law to apply to negligence

and actual damages issues and Michigan law to apply solely as to punitive damages.

Applying Colorado's punitive damages statute here appears consistent with the approach by other courts determining the applicable state law for assessing punitive damages in cases against out-of-state entities.  *See e.g., Danziger v. Ford Motor Co.,* 2005 U.S. Dist. LEXIS 14356 *12 (D.D.C., July 11, 2005) (". . . Maryland is the jurisdiction with the most significant relationship with the issue at bar.  Ford placed the allegedly defective Explorer into the stream of commerce in Maryland and, according to Plaintiffs, allegedly misrepresented the vehicle's safety features in Maryland.  Because the purpose of punitive damages is to sanction tortfeasors, Maryland's policy to punish and deter wrongful conduct within its jurisdiction would be significantly advanced through application of its product liability law."); *Farrell v. Ford Motor Co.*, 199 Mich. App. 81, 94, 501 N.W.2d 567, 572 (Mich. App. 1993) (concluding that North Carolina had a substantial interest in applying its statute of repose to a claim against Ford because "Michigan has little or no interest in this North Carolina accident involving a North Carolina resident.  Michigan has no interest in affording greater rights of tort recovery to a North Carolina resident than those afforded by North Carolina.").

Accordingly the Court hereby determines that Colorado substantive law should apply to the claim for punitive damages in this case.  Ford appears to concede this result as its subsequent Summary Judgment Motion on the Issue of Punitive Damages applies Colorado law to its analysis.  Therefore, Ford Motor Company's Motion for Partial Summary Judgment (Dkt. # 40) is DENIED.

**C.     May 2, 2005 Summary Judgment Motion on the Issue of Punitive Damages (Dkt. # 59)**

In a separate motion for partial summary judgment, Ford requests that the Court preclude plaintiffs from presenting at trial evidence relating to punitive damages or requesting such damages from the jury.  It argues that even under Colorado's "exceptionally high" punitive damages standard, plaintiffs cannot show that Ford "acted with an evil intent, with the specific purpose of injuring the plaintiff[s], or with a wrongful motive that would entitle plaintiffs to punitive damages."  Summary Judgment Motion at 1, 10 (internal quotation marks omitted).  Ford essentially argues that because reasonable minds can differ as to the appropriateness of the design of the Explorer, there is insufficient evidence to meet Colorado's stringent standard for the award of punitive damages.  Plaintiffs respond by presenting the Court with several issues of alleged disputed fact regarding the propensity of Ford Explorers to roll over and cause serious injuries, the knowledge of Ford's management about potential rollover safety issues during the design phase and the testimony of Dr. Ian S. Jones, which they contend demonstrate that punitive damages are warranted in this case.

In Colorado punitive damages are a creature of statute, namely C.R.S. § 13-21-102(1)(a), which provides:

> In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or insult, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

A plaintiff cannot receive punitive damages unless all of the statutory elements have been established beyond a reasonable doubt. C.R.S. § 13-25-127(2).  And, even if the

plaintiff has established that punitive damages are permissible, a punitive damages award remains at the discretion of the trier of fact. *Seaward Constr. Co., Inc. v. Bradley*, 817 P.2d 971, 975 (Colo. 1991).

In order for punitive damages to be awarded, "the act causing the injury [must have been] performed with an evil intent and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of the plaintiff's rights as to demonstrate a wrongful motive." *Miller v. Solaglas California, Inc.* 870 P.2d 559, 568 (Colo. App. 1993). "Wanton and reckless" conduct involves "conduct that creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences." *Tri-Aspen Const. Co. v. Johnson*, 714 P.2d 484, 486 (Colo. 1986).

There are many disputed issues of material fact before the Court related to plaintiffs' claims that preclude summary judgment on the issue of punitive damages. Plaintiffs present exhibits describing Ford's internal testing that found a prototype model Explorer had two of its wheels lift off the ground in avoidance maneuvers (Exhibit 6 to Plaintiffs' Response to Ford's Summary Judgment Motion on the Issue of Punitive Damages, Deposition of Donald F. Tandy, Jr., at 23:17-21); instances where management allegedly ignored engineering recommendations (*id*. at 50:7-25). The exhibits also include internal memoranda that potentially demonstrate management's knowledge that the Explorer is the only vehicle in its class that could fail the Consumer Reports' avoidance maneuver test and accepting that risk (Exhibit 7 at 2); alleged knowledge by Ford of the Explorer's propensity for "jacking," which causes the center of

gravity to rise and the track width to narrow in turns (Exhibit 9 at 2); and a recommendation that a permanent solution be found rather than the use of under inflated tires (Exhibit 43 at 2).

Plaintiffs also point to correspondence between Ford and Firestone that indicate knowledge of potential rollover issues with the Explorer. The Explorer "achieve[s] nearly 14 degree; there is 2 wheel lift," (Exhibit 11 at 4); Ford's requirement that test results should no longer be put in writing (Exhibit 16 at 2). There are also indications from internal documents that Ford was prepared to go forward in order to meet production schedules despite knowledge of a higher risk of rollover (Exhibit 6 at 49:21); that management was aware of the risk that the Explorer would perform poorly in consumer safety testing (Exhibit 7 at 2-3); a discussion as to how to discount poor performance in consumer safety testing (Exhibit 8 at 3); and an acknowledgment that Ford had been able to avoid litigation related to rollovers due to the settling of claims, but that such settlements were becoming less likely as lawyers learn more about the design of the Explorer (Exhibit 13 at 2).

Finally, Dr. Jones, plaintiffs' expert, has opined that no reasonable person would consider a vehicle with a static stability factor, a measure of the rollover propensity of a vehicle, of under 1.1 is a safe design. The 1996 Explorer, according to documents submitted by Ford, has a static stability factor of 1.06. *See* Exhibit A-8 to Ford's Summary Judgment Motion on the Issue of Punitive Damages. At best, Ford's response that its engineers disagree with such an assessment creates a question of fact as to what reasonable people would consider to be a safe design and whether the

Explorer met those standards.

All this evidence, considered in a light most unfavorable to Ford, could lead a reasonable jury to find beyond a reasonable doubt that Ford's actions with regard to the rollover propensity of the Explorer were fraudulent or malicious, or showed a wanton and reckless disregard of plaintiffs' safety under applicable Colorado law.  The Court is persuaded that Ford's alleged knowledge of the general propensity of Ford Explorer models (and sport utility vehicles in general) to roll over during a single vehicle accident and its management's response to the problem is arguably sufficient to establish a question of fact as to punitive damages in this case.  Accordingly, Ford's Summary Judgment Motion on the Issue of Punitive Damages (Dkt. # 59) is DENIED.

### III.   CONCLUSION

The Court DENIES Defendant Ford Motor Company's Motion for Partial Summary Judgment (Dkt. # 40).  The Court also DENIES Defendant Ford Motor Company's Summary Judgment Motion on the Issue of Punitive Damages (Dkt. # 59).

DATED: August 12, 2005

BY THE COURT:

s/ Phillip S. Figa
_____
Phillip S. Figa
United States District Judge